1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11   LAND O'LAKES,                          CASE NO. CV-F-11-2010 LJO SMS

12                    Plaintiff,            **ORDER ON PLAINTIFF'S MOTION TO
                                            DISMISS COUNTERCOMPLAINT** (Doc. 19)
13         vs.

14   TERRY GONSALVES, BARBARA MEDICO
     BENNIE M. GONSALVES, and DELORES
15   M. GONSALVES,

16                    Defendants.
     _____
17

18   and related counteraction.

19   _____/

20                              **INTRODUCTION**

21         Counterclaim defendant Land O'Lakes moves to dismiss all of the counterclaims filed by

22   counterclaimants Terry Gonsalves, Barbara Medico, Bennie M. Gonsalves, and Delores Gonsalves

23   (collectively referred to as "counterclaimants") pursuant to Fed. R. Civ. P. 12(b)(6).  Land O'Lakes

24   argues that counterclaimants have failed to plead sufficient facts for each claim  and have failed to plead

25   sufficient facts that Land O'Lakes owed any duties to the counterclaimants.  In addition, Land O'Lakes

26   moves to dismiss two counterclaimants from the countercomplaint, arguing that they lack standing to

27   assert these claims.  For the reasons discussed herein, this Court GRANTS in part and DENIES in part

28   Land O'Lakes' motion to dismiss and GRANTS the counterclaimants leave to amend.

                                            1

1

**BACKGROUND**

2

**Allegations of the Complaint**

3      Land O'Lakes is a non-profit cooperative engaged in the business of producing and marketing

4   dairy products.  Land O'Lakes operates a dairy production facility in Tulare, California.

5      Bennie and Delores Gonsalves ("the Gonsalves") formerly owned and operated a large dairy farm

6   in Laton, California known as the Bennie Gonsalves Dairy.  The Gonsalves formerly delivered and sold

7   all of the milk produced on the Bennie Gonsalves Dairy to Land O'Lakes' Tulare dairy production

8   facility.  The Gonsalves delivered and sold milk pursuant to a Milk Marketing Agreement dated January

9   29, 2008 ("2008 Agreement").

10      On June 4, 2009, the Gonsalves notified Land O'Lakes that they would no longer be involved

11   in the operation or management of the Bennie Gonsalves Dairy, as they were turning over management

12   and control of the dairy to their son, Terry Gonsalves ("Mr. Gonsalves"), and their daughter, Barbara

13   G. Medico ("Ms. Medico").  The Gonsalves asked Land O'Lakes to terminate the 2008 Agreement

14   between them and Land O'Lakes, and to procure a new agreement for the Bennie Gonsalves Dairy with

15   Mr. Gonsalves and Ms. Medico.  Pursuant to this request, Land O'Lakes entered into a June 1, 2009

16   Milk Marketing Agreement ("2009 Agreement") with Mr. Gonsalves and Ms. Medico.

17      Under the terms of the 2009 Agreement, Mr. Gonsalves and Ms. Medico agreed to deliver to

18   Land O'Lakes all of the milk produced by the Bennie Gonsalves Dairy.  The parties further agreed that

19   Land O'Lakes would market all of the milk produced at the dairy.  The 2009 Agreement had an initial

20   term of one year, which would be automatically renewed for successive one-year terms unless either

21   party provided the other party with a one-year notice of termination.  The parties operated pursuant to

22   the 2009 Agreement without incident for the remainder of 2009 and throughout 2010.

23      The price paid for the milk produced at the dairy depends on the marketing program selected by

24   Mr. Gonsalves and Ms. Medico.  They had the option either to sell their milk at fluctuating market prices

25   or agree to fixed prices set forth pursuant to a long-term forward contract.  Pursuant to a forward

26   contract, a Land O'Lakes member agrees to deliver to Land O'Lakes a specific quantity of milk over a

27   specific period of time for a specific price.

28      In January 2010, the parties entered into a Forward Milk Contracting Program Master

2

Participation Agreement ("Participation Agreement").  In November 2010, Mr. Gonsalves, acting on behalf of himself and his sister, entered into a Forward Cheese Price Contract.  Pursuant to this contract, Mr. Gonsalves and Ms. Medico agreed to deliver to Land O'Lakes 517,263 pounds of milk per month of the milk produced at the dairy from January through December 2011 at a block cheese price of $1.575 per pound.  In December 2010, Ms. Medico, on behalf of herself and her brother, entered into a Forward Class 4a Contract.  Pursuant to this contract, the siblings agreed to deliver to Land O'Lakes 1,500,000 pounds of milk per month of the milk produced at the dairy from January through December 2011 at a price of $15.17 per hundredweight.   Mr. Gonsalves and Ms. Medico delivered milk produced at the dairy pursuant to the Forward Cheese Price Contract and the Forward Class 4a Contract from January through August 2011.

In September 2011, Mr. Gonsalves and Ms. Medico dramatically reduced the quantity of milk delivered to Land O'Lakes.  Whereas they were delivering around 2 million pounds of milk per month before, they delivered only 62,237 pound of milk to Land O'Lakes in September 2011 and only 52,444 pounds of milk in October 2011.

In September 2011, Land O'Lakes Manager of Member Relations Lawrence E. Serpa ("Mr. Serpa") met with Mr. Gonsalves to discuss the decrease in the quantity of milk delivered.  Mr. Gonalves told Mr. Serpa that the quantity of milk delivered to Land O'Lakes decreased because his father wanted their milk to be sold to another processor, Pacific Gold Milk Producers ("Pacific Gold").

Land O'Lakes sent an October 20, 2011 letter to Mr. Gonsalves and Ms. Medico to demand that they resume delivery of all of their milk to Land O'Lakes.  Mr. Gonsalzes and Ms. Medico have failed and refused to deliver all of their milk to Land O'Lakes, despite their contracts to do so.  Land O'Lakes alleges that it has incurred losses in excess of $600,000 to date based on the alleged failure of Mr. Gonsalves and Ms. Medico to deliver their milk to Land O'Lakes.

Based on these allegations, Land O'Lakes initiated this action against the Gonsalves, Mr. Gonsalves and Ms. Medico on December 5, 2011.  Land O'Lakes asserts a claim against Mr. Gonsalves and Ms. Medico for breach of contract and seeks specific performance of the contracts and injunctive relief.  In addition, Land O'Lakes asserts a claim for tortious interference with a contract against the Gonsalves.

**Allegations of the Counterclaim**

The Gonsalves, Mr. Gonsalves, and Ms. Medico filed a counterclaim against Land O'Lakes based on the following allegations:

In 2009, the dairy industry was hit hard by unprecedented conditions, including high grain costs and low milk prices.  During this year, dairymen in California, including the Gonsalves, were losing money daily on dairy operations.  To minimize these risks, Land O'Lakes encouraged its members to lock in milk prices through forward contracts.

Based on representations made by Land O'Lakes and the historical practices between Land O'Lakes and the Bennie Gonsalves Dairy, Mr. Gonsalves executed the Forward class 4a Contract offer for 1.5 million pounds of milk at Class 4a price of $15.17 per hundredweight, expecting only to receive 20-30% of the amount offered.  When Land O'Lakes presented the Forward Class 4a Contract for butter to the dairy in November 2011, an agent or employee of Land O'Lakes specifically represented to Mr. Gonsalves the following: "Remember when you make your offer, you never get what you want.  You have to request more in your offer than you want."  While promoting the contract, Land O'Lakes employees clearly told Mr. Gonsalves to request more pounds of milk than he desired in the contract, as the dairy would only received a portion of the amount offered.  These representations were consistent with Land O'Lakes' past practices with the Bennie Gonsalves Dairy.  Historically, when the dairy entered into forward contracts for cheese or milk, the average of amount accepted by Land O'Lakes was 22.45% of the amount offered by the dairy.  In the preceding four or five years, the dairy had received a range of 20% to 30% of the amount offered by the dairy.

For the first time ever with respect to the Bennie Gonsalves Dairy, Land O'Lakes fulfilled 100% of the dairy's contract offer (and 100% of the offers of all other Land O'Lakes members).  This 100% acceptance was contrary to Land O'Lakes representations, past history, and past practices.  Soon after the contract was executed, milk prices rose to almost $21.00 per hundredweight.  The counterclaimants alleged that Land O'Lakes fulfilled 100% of the milk offered to them and all of its members solely to Land O'Lakes advantage and without full disclosure.  Specifically, the counterclaimants alleged that Land O'Lakes knew or should have known, and should have disclosed to its members, that there was a shortage of butter and that milk prices were expected to increase shortly.

1    The counterclaimants allege that as a result of Land O'Lakes wrongful conduct, they lost a

2    significant sum of money over the course of the contact.  They assert the following claims against Land

3    O'Lakes:

4         1.    Breach of the covenant of good faith and fair dealing;

5         2.    Breach of fiduciary duties;

6         3.    Negligent or intentional misrepresentation; and

7         4.    Concealment and suppression of fact.

8    They seek an award of general and special damages, attorneys' fees and costs, and prejudgement interest.

9                              **Motion to Dismiss Countercomplaint**

10    On February 14, 2012, Land O'Lakes moved to dismiss the countercomplaint.  Land O'Lakes

11    argues that claims for negligent or intentional misrepresentation and the concealment of suppression of

12    fact fail, because the counterclaimants failed to plead these causes of action with sufficient particularity

13    as required by Fed. R. Civ. P. 9(b).  Land O'Lakes argues that the claims for breach of the covenant of

14    good faith and fair dealing and concealment and suppression of fact fail, because Land O'Lakes had no

15    legal duty to disclose opinions regarding commodity prices.  Land O'Lakes contends that the claim for

16    the breach of the covenant of good faith and fair dealing also fails because the allegations are based on

17    pre-contract negotiations.  As to the claim for breach of fiduciary duties, Land O'Lakes argues that the

18    counterclaimants have failed to allege sufficient facts to establish that Land O'Lakes owed a fiduciary

19    duty to them.  Finally, Land O'Lakes argues that the Gonsalves are not parties to or third-party

20    beneficiaries of any contracts at issue in this case and lack standing to assert any claims against Land

21    O'Lakes based on the contracts between Land O'Lakes and Mr. Gonsalves and Ms. Medico.

22    The counterclaimants opposed the motion to dismiss on March 1, 2012.  They argue that each

23    claim alleged is cognizable legally and pled sufficiently.  They argue that Land O'Lakes was a fiduciary

24    of the dairy and had a duty to disclose information that Land O'Lakes knew about the milk market.  They

25    further argue that as owners of the Bennie Gonsalves Dairy who have suffered economic damages, they

26    have standing to assert claims against Land O'Lakes.

27    Land O'Lakes filed a reply on March 6, 2012.  Having read and reviewed the parties'

28    memoranda, the applicable legal authorities, and the record, this Court issues the following order.

1

## STANDARDS OF REVIEW

2

### Fed. R. Civ. P. 12(b)(6)

3

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

4

pleadings set forth in the complaint or countercomplaint.   A Fed. R. Civ. P. 12(b)(6) dismissal is proper

5

where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged

6

under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

7

In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the

8

allegations of the complaint, construes the pleading in the light most favorable to the party opposing the

9

motion, and resolves all doubts in the pleader's favor.  *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588

10

(9th Cir. 2008).

11

To survive a motion to dismiss, the plaintiff or counterclaimant must allege "enough facts to state

12

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,

13

1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

14

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

15

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   "The plausibility standard is not akin to a 'probability

16

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

17

(quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with'

18

a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to

19

relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

20

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

21

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

22

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

23

*Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted).   Thus, "bare

24

assertions...amounting to nothing more than a 'formulaic recitation of the elements'...are not entitled to

25

an assumption of truth." *Iqbal*, 129 S. Ct. at 1951 (quoted in *Moss v. United States Secret Serv.*,572 F.3d

26

962, 969 (9th Cir. 2009)).   A court is "free to ignore legal conclusions, unsupported conclusions,

27

unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm*

28

*Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).   In

1  practice, a counterclaim "must contain either direct or inferential allegations respecting all the material

2  elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

3  **Fed. R. Civ. P. 9(b)**

4  Although Fed. R. Civ. P. 8 requires only a short and plain statement, Fed. R. Civ. P. 9(b) requires

5  a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b)'s

6  particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state

7  law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the

8  Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally

9  imposed rule." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.2003) (quoting *Hayduk*

10  *v. Lanna*, 775 F.2d 441, 443 (1st Cir.1995) (italics in original)).

11  Fed. R. Civ. P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's

12  requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of

13  unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172,1178 (9th Cir.1996).  Fed. R. Civ. P 9(b)

14  requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which

15  is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that

16  they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727,731 (9th Cir.1985).  "A pleading

17  is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can

18  prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671–672 (9th

19  Cir.1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d

20  866, 866 (9th Cir.1997)). The Ninth Circuit has explained:

21  Rule 9(b) requires particularized allegations of the circumstances constituting fraud. The time, place and content of an alleged misrepresentation may identify the statement or the

22  omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have

23  consistently required that circumstances indicating falseness be set forth.... [W]e [have] observed that plaintiff must include statements regarding the time, place, and nature of

24  the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." ... The plaintiff must set forth what is false or misleading about a statement,

25  and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading....

26  In certain cases, to be sure, the requisite particularity might be supplied with great

27  simplicity.

28  *In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547–1548 (9th Cir.1994) (en banc) (italics in

original), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm*. Corp., 927 F.Supp. 1297 (C.D.Cal.1996); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged).

#### DISCUSSION

#### **Whether the Fraud Claims are Plead Sufficiently**

The counterclaimants assert a claim for negligent or intentional misrepresentation and a claim for concealment and suppression of fact.  As set forth above, these claims are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standards.  Pursuant to these standards, the counterclaimants must state the allegations of these claims "with particularity."

As to the negligent or intentional misrepresentation claim, the counterclaimants allege that Land O'Lakes' "agents and/or employees" stated to Mr. Gonsalves in November 2010: "[R]emember when you make your offer, you never get what you want.  You have to request more in your offer than you want." Countercompl., ¶4.  The counterclaimants argue that this statement was a misrepresentation designed to  induce members to lock in lower milk prices.  Despite these misrepresentations, and contrary to past conduct, Land O'Lakes accepted 100% of the offer.

The counterclaimants further allege that Land O'Lakes' "agents and/or employees" failed to disclose that butter was short, that milk prices were rising, and that Land O'Lakes intended to accept all pounds of milk offered at the Class 4a contract price.  Countercompl., ¶¶10, 32.  These allegations, in addition to the detailed past practices of Land O'Lakes, form the basis of the concealment cause of action.

Land O'Lakes argues that counterclaimants have pled these claims insufficiently because they failed to identify the agents or employees of Land O'Lakes who allegedly made the material misrepresentations or concealed the material facts.  Land O'Lakes points out that the counterclaimant fails to identify the person or persons who allegedly made the implied promise not to accept the full amount of the offer for the Forward Class 4a Contract.  In addition, Land O'Lakes suggests that the counterclaimant is deficient because it fails to allege the authority of the person or persons to speak on behalf of Land O'Lakes.  With respect to the concealment claim, Land O'Lakes argues that the

8

1  counterclaimants failed to allege the name or names of the person or persons who allegedly concealed

2  the information and the circumstances creating the duty of disclosure.

3      The counterclaimants counter that the heightened pleading standard of Fed. R. Civ. P. 9(b)

4  require the allegations only be "specific enough to give defendants notice of the particular misconduct

5  which is alleged to constitute the fraud...so that they can defend against the charge and not just deny that

6  they have done nothing wrong." *Semege v. Weidner*, 78- F.2d 727, 731 (9th cir. 1985).   The

7  counterclaimants contend that the countercomplaint sufficiently sets forth the conduct upon which their

8  claims are based.  According to counterclaimants, Land O'Lakes is able to respond to these claims based

9  on the well-plead allegations of the countercomplaint.

10     To satisfy the Fed. R. Civ. P. 9(b) heightened pleading standard, the counterclaimants must allege

11 "the who, what, when, where, and how" of the alleged fraud. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

12 Cir. 1997).  This Court has held consistently that in a fraud action against a corporation, "a plaintiff must

13 allege the names of the person who made the allegedly fraudulent misrepresentations, their authority to

14 speak, to whom they spoke, what they said or wrote, and when it was said or written." *Macris v. Bank*

15 *of America, N.A.*, 2012 WL 273120 *11-12 (E.D. Cal. 2012) (quoting *Tarmann v. State Farm Mut. Auto.*

16 *Ins. Co.*, 2 Cal. App.4th. 153, 157 (1991)).  This Court applies these standards to the counterclaimants'

17 claims sounding in fraud.

18     As to the negligent or intentional misrepresentation claim, counterclaimants fail to plead this

19 claim with particularly.  Although the counterclaimants identify which statement was made, to whom,

20 and when, they fail to identify the name of the person who made the alleged misrepresentation and what

21 authority that person had to speak on behalf of Land O'Lakes.  Without the name of the person who

22 made the alleged misrepresentation, Land O'Lakes cannot defend itself properly against these

23 allegations.  In addition, the name (or at least a description or title of the person) is within the knowledge

24 of Mr. Gonsalves and can be ascertained without unnecessary discovery.  Because the negligent or

25 intentional misrepresentation claim fails to specify or identity the name of the person who made the

26 alleged misrepresentation and that person's authority, if any, to speak on behalf of Land O'Lakes, the

27 counterclaimants have failed to state this claim with particularly.  Accordingly, Land O'Lakes motion

28 to dismiss this claim is granted.  Although they did not request it, the counterclaimants are granted leave

to amend this claim to state these allegations with particularity.

Similarly, the counterclaimants have failed to plead sufficiently the concealment claim.  The counterclaimants have identified the types of information they claim Land O'Lakes employees or agents allegedly concealed from them.  The counterclaimed have failed to identify which employees or agents of Land O'Lakes had this knowledge and what duty those employees had to disclose this information to the counterclaimants.  Accordingly, the concealment cause of action is dismissed with leave to amend.

### Whether Failure to Disclose Market Prices is Cognizable Basis for Claims

The counterclaimants' claims for breach of the duty of good faith and fair dealing, breach of fiduciary duty, and concealment and suppression of fact are based, in part, on allegations that Land O'Lakes failed to disclose that there was a shortage of butter and that milk prices would increase in the near future.

Land O'Lakes argues that there is no legally cognizable claim based on its alleged failure to disclose its opinion regarding market prices.  Land O'Lakes contends that it had no duty to disclose the information about milk prices, because information regarding past and present milk prices is a matter of public knowledge.  Moreover, Land O'Lakes contends that the Forward Milk Contracting Checklist and Disclosure Statement put Mr. Gonzalves and Ms. Medico on inquiry notice to investigate the market and made clear that Land O'Lakes offered "no opinion" regarding prices.  The disclosure statement reads in relevant part:

> Participant understands that LOL is providing forward contracting programs as a service to its members.  Participant understands that LOL provides no opinion as to whether contract prices will be favorable or unfavorable to the Participant.  An offer and acceptance of a Daily Market Offer contract or and [sic] Open Order by LOL for any given time period is not an endorsement by LOL of forward contracting on that date at that price.  Participant assumes all risks in fluctuations of cash market (milk or dairy product) prices relative to any forward contracting program and understands that the forward contract price may be lower than the cash market price at the time of delivery.

Forward Milk Contracting Checklist and Disclosure Statement, Compl. Exh. D.  Land O'Lakes further argues that its alleged belief regarding future milk prices is an opinion or projection relating to future events, which cannot form the basis for any claim.

The counterclaimants counter that their claims for the breaches and concealment are cognizable.  They first point out that these claims are not based solely on the alleged failure to disclose that the milk

1   prices would increase.  These claims are also based on the misrepresentations made about the pounds

2   of milk the dairy must offer for the Class 4a contract and the failure to disclose both the shortage of

3   butter and Land O'Lakes' intent to accept 100% of the milk offered by the dairy.  The counterclaimants

4   contend that these allegations are sufficient to support the three causes of action challenged.  This Court

5   agrees.  Land O'Lakes' argument is focused solely on whether its alleged knowledge or opinion on milk

6   prices or the shortage of butter can be a proper basis for these claims.  Accordingly, these claims are

7   plead sufficiently to the extent that they are based on these alleged misrepresentations related to the

8   amount of pounds per milk to offer and that were eventually accepted by Land O'Lakes.

9        To the extent that Land O'Lakes argues that the counterclaims are based improperly on its

10   knowledge of past and present milk prices, Land O'Lakes' arguments mischaracterize the allegations

11   of the countercomplaint.  Land O'Lakes correctly points out that past and present milk prices were

12   matters of public knowledge; however, none of the claims alleges any alleged misconduct based on Land

13   O'Lakes' knowledge of past or present milk prices.

14        Similarly, Land O'Lakes' motion fails to the extent it argues that the counterclaims are

15   improperly based on its opinion about future milk prices.  Land O'Lakes argues that its opinions about

16   what future prices may be are mere speculation.  Land O'Lakes' opinion ignores the substance of the

17   countercomplaint; to wit, that Land O'Lakes knew that there was a shortage of butter and knew that milk

18   prices would be increasing.  The allegations of the countercomplaint, construed as true and viewed in

19   a light most favorable to the nonmoving party, make clear that the knowledge that Land O'Lakes

20   allegedly had about the butter and future milk prices went beyond speculation.

21   **Whether Counterclaimants State a Claim for Breach of Good Faith and Fair Dealing**

22        The counterclaimants' first cause of action asserts that Land O'Lakes breached the implied

23   covenant of good faith and fair dealing.  Under California law, "every contract...imposes upon each party

24   a duty of good faith and fair dealing in its performance and enforcement." *Carma Developers (Cal.), Inc.*

25   *v. Marathon Development Cal. Inc.*, 2 Cal. 4th 342, 371-72 (1992) (internal quotations omitted).  The

26   purpose of the implied covenant of good faith and fair dealing is to prevent one contracting party from

27   unfairly frustrating the other party's right to receive the benefits of the parties' agreement. *See Guz v.*

28   *Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000).

The counterclaimants' first cause of action is based on the following allegations: Land O'Lakes encouraged and induced the counterclaimants to enter into the Forward Class 4a Contract in 2010 without disclosing to them that butter was short and/or the likelihood that milk prices were increasing or likely to increase in the very near future. Land O'Lakes knew or should have known that butter was short and that milk prices were likely to increase in the future. Moreover, Land O'Lakes encouraged the counterclaimants to offer more pounds of milk than they actually wanted to contract for in the offer while knowing that Land O'Lakes intended to accept all pounds offered at the price of $15.17 per hundredweight. The counterclaimants offered 1.5 million pounds of milk per month at the Class 4a price of $15.17 per hundredweight with the understanding that it would receive significantly less than it asked for. "As a direct result...Land O'Lakes engaged in dishonest conduct and unlawfully induced Counter Claimants to enter into the Contract, and by doing so breached the covenant of good faith and fair dealing implied in the agreements entered into by and between Land O'Lakes and Counter Claimants." Countercompl., ¶17.

These allegations fail to state a claim for the implied covenant of good faith and fair dealing. "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1993). The "implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *McClain v. Octagon Plaza*, LLC, 159 Cal. App. 4th 784, 799 (2008). The counterclaim alleges that Land O'Lakes acted in bad faith because it misrepresented that it would accept less than the amount of milk offered and concealed its knowledge that the milk prices were about to increase. Although the counterclaimants allege that Land O'Lakes breached the covenant "implied in the agreements" between the parties, the only agreement identified by counterclaimants is the Forward Class 4a Contract. That contract was not in existence at the time the alleged misrepresentations and concealment in bad faith and cannot form the basis of the breach of the implied covenant of good faith and fair dealing claim. *See McClain*, 159 Cal. App. 4th at 798-99 (dismissing breach of implied covenant of good faith and fair dealing claim based on allegations of misrepresentations made during the negotiation of a commercial lease). The allegations appear to state a claim for fraud in the inducement, but do not state a claim for the cause of action asserted. *See id.*

12

1    While this claim does not necessarily include an element of fraud, this Court applies a heightened

2    pleading standard because the complaint is sounded in fraud.  The counterclaimants assert allegations

3    of fraudulent conduct in support of this cause of action.  If the Court were to ignore the allegations of

4    fraud, counterclaimants' claim for breach of the covenant of good faith and fair dealing would fail to

5    state a claim under Fed. R. Civ. P.  8 standard, as there is no conduct asserted that is non-fraudulent.

6    Because this countercomplaint is "sounded in fraud," this claim must satisfy Fed. R. Civ. 9(b)'s

7    heightened pleading standard.  But because the complaint fails to specify which contract or contract

8    provisions were relied upon in this cause of action, and appears to base this claim on pre-contractual

9    misrepresentations and concealment, this Court dismisses this claim with leave to amend.[1]

10   ## Whether Land O'Lakes Owed Counterclaimants a Fiduciary Duty

11   Land O'Lakes argues that the second counterclaim fails, because it owed no fiduciary duties to

12   the counterclaimants.  In their breach of fiduciary duties cause of action, the counterclaimants alleged

13   that a "fiduciary duty is owed by Land O'Lakes, a cooperative, to its member, including Counter

14   Claimants, pursuant to the Milk Marketing Agreement and other agreements entered into by and between

15   the Dairy and Land O'Lakes." Countercompl., ¶19.  Land O'Lakes argues that this allegation is

16   insufficient to establish that it owned the counterclaimants a fiduciary duty.

17   The "existence of a fiduciary relation is a question of fact which properly should be resolved by

18   looking at the particular facts and circumstances of the relationship at issue." *Bear Stearns & Co. v.*

19   *Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir.1996). The "existence of a confidential or fiduciary

20   relationship depends on the circumstances of each case and is a question of fact for the fact trier."

21   *Kudokas v. Balkus*, 26 Cal.App.3d 744, 750, 103 Cal.Rptr. 318 (1972). "A fiduciary or confidential

22   relationship can arise when confidence is reposed by persons in the integrity of others, and if the latter

23   voluntarily accept or assume to accept the confidence, they cannot act so as to take advantage of the

24   others' interests without their knowledge or consent." *Tri–Growth Centre City, Ltd. v. Silldorf, Burdman,*

25

26

27   [1]In opposition, the counterclaimants argue that Land O'Lakes breached the implied covenant of good faith and fair dealing that arises from the Milk Marketing and Membership Agreement signed between Land O'Lakes and Mr. Gonsalves and Ms. Medico.  Because the counterclaimants do not rely on or mention the Milk Marketing and Membership Agreement

28   in their counterclaim, it is difficult for this Court to construe this position from the pleading as written.

13

Case 1:11-cv-02010-LJO-SMS   Document 25   Filed 03/12/12   Page 14 of 15

1  *Duignan & Eisenberg*, 216 Cal.App.3d 1139, 1150, 265 Cal.Rptr. 330 (1989).

2      This Court finds that the counterclaimants have alleged sufficiently a fiduciary relationship

3  between them and Land O'Lakes.   The counterclaimants argue that the relationship between a

4  cooperative marketing association and its members is fiduciary in nature.  Pursuant to this position, Land

5  O'Lakes' status as a fiduciary is a matter of law, based on federal and state cooperative marketing

6  statutes. *See* 7 U.S.C. §729 (the "Capper-Volstead Act"); Cal. Corp. Code §§14550-14551 (Nonprofit

7  Cooperative Agricultural Marketing Associations).  Because the relationship between a cooperative and

8  its members has a fiduciary character, *Bogardus v. Santa Ana W.G. Assn.*, 41 Cal. App. 2d 939, 948

9  (1940), the sole allegation that Land O'Lakes owes the counterclaimants a fiduciary duty based on their

10  relationship between cooperative and member is sufficient.  Accordingly, Land O'Lakes' motion to

11  dismiss this cause of action is denied.

12                    **Whether the Gonsalves are Parties to the Counterclaim**

13      Land O'Lakes argues that the Gonsalves must be dismissed from this counterclaim because

14  they lack standing.  Land O'Lakes contends that all of the counterclaims are based on the contract and

15  pre-contractual negotiations between Land O'Lakes and Mr. Gonsalves and Ms. Medico.  Land O'Lakes

16  concludes that because the Gonsalves are not parties to the contract and were not involved in those

17  negotiations, they lack standing to pursue any claims against Land O'Lakes.  Moreover, Land O'Lakes

18  faults the counterclaimants for failing to allege that the Gonsalves are third-party beneficiaries to the

19  contracts at issue.

20      The counterclaimants argue that the Gonsalves have standing to pursue damages caused to the

21  Bennie Gonsalves Dairy, because they are owners of the dairy.  Although the Gonsalves transferred

22  management of the operation to their grown children, the counterclaim alleges that the Gonsalves

23  continued to maintain ownership of the dairy.  The counterclaimants assert that although Mr. Gonsalves

24  and Ms. Medico signed agreements with Land O'Lakes, the party to these agreements is the Bennie

25  Gonsalves Dairy.  Because the Gonsalves own the dairy, the counterclaimants maintain that they are

26  proper parties in this action.

27      Construing the counterclaim in a light most favorable to the counterclaimants, this Court

28  finds that the Gonsalves are proper parties in this action.  If the Bennie Gonsalves Dairy is the

                                          14

contracting party in the agreements with Land O'Lakes, and the Gonsalves own the dairy, then they may pursue claims on behalf of the dairy.  If Mr. Gonsalves and Ms. Medico are the contracting parties, then the allegations of the countercomplaint can be construed to view the Gonsalves as third-party beneficiaries.  Alleged third-party beneficiaries must be an intended beneficiary of a contract. *Bancomer, S.A. v. Sup. Ct.*, 44 Cal. App. 1450, 1458 (1996).  That is, contracting parties must have intent to benefit a third part and such intent must appear in the contract.  Although the counterclaimants did not allege specifically that the Gonsalves were third-party beneficiaries to the agreements, the facts alleged (i.e. that they own the dairy and that the dairy would benefit from the contract) raise this inference in their favor.  In addition, the countercomplaint alleges that the alleged misrepresentations were directed at all of the counterclaimants.  Accordingly, the motion to dismiss the Gonsalves for lack of standing fails.

## CONCLUSION

For the foregoing reasons, this Court:

1.      GRANTS in part and DENIES in part Land O'Lakes' motion to dismiss;

2.      DISMISSES the first, third, and fourth counterclaims with LEAVE TO AMEND;

3.      ORDERS the counterclaimants to file an amended countercomplaint no later than March 30, 2012.

IT IS SO ORDERED.

**Dated:    March 9, 2012**              /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE